ROBERT B. BROUGHTON v. CELESTE GOLD BROUGHTON

No. 8110DC58

(Filed 21 September 1982)

1. **Divorce and Alimony § 19.4— modification of alimony award—changed circumstances—sufficiency of evidence**

    In an action for modification of an alimony award, the trial court did not err in finding changed circumstances sufficient to support an increase in alimony where evidence was presented on the estates, earnings and accustomed standard of living of the parties, and findings were made concerning the pre-divorce lifestyle, the property holdings of both parties and the plaintiff's income. G.S. 50-16.9 and G.S. 50-16.5.

2. **Divorce and Alimony § 19.4— modification of alimony—earning capacity finding erroneous—insufficient to cause remand**

    The trial court erred in entering a finding concerning plaintiff's earning capacity where there were no facts showing a deliberate attempt to depress his earnings; however, the error was not fatal since the award could have been properly based on the plaintiff's earnings under G.S. 50-16.5(a).

3. **Divorce and Alimony § 19— dependent spouse's earning capacity—necessity for findings**

    It was not a denial of equal protection for the trial court to consider plaintiff's earning capacity but not to consider defendant's earning capacity in making an award of alimony.

4. **Divorce and Alimony § 19— modification of alimony award—award of attorney's fees proper**

    The trial court did not err in awarding attorney's fees to defendant for the motion directed at increased alimony where defendant showed (1) she was a "dependent spouse as defined by G.S. 50-16.1(3), (2) she was entitled to the relief demanded, and (3) defendant did not have sufficient means to defray expenses of the suit. Further, G.S. 50-11(c) allows an award of counsel fees "for services rendered to a dependent spouse subsequent to an absolute divorce in seeking to obtain or in resisting a motion for revision of alimony or other rights . . . ."

**5. Evidence § 45— testimony as to value of property—properly admitted**

The trial court did not err in allowing a witness to testify as to the fair market value of plaintiff's property since the witness testified as to his personal examination of the property, as to how it was zoned and to its highest and best use therefore laying a proper foundation for the testimony.

**6. Divorce and Alimony § 19— modification of alimony award—testimony concerning income and estate of plaintiff's present wife—no error**

Admission of testimony concerning the income and estate of plaintiff's present wife and consideration of that evidence in determining plaintiff's ability to pay increased alimony was not error since (1) the court's consideration of the assets of plaintiff's present wife was negligible, and (2) the Court in *Wyatt v. Wyatt*, 35 N.C. App. 650 (1978) allowed consideration of the present wife's income in determining the husband's ability to pay.

**7. Divorce and Alimony § 19.7— modification of alimony award—review of court's findings—supported by competent evidence**

In a suit concerning modification of alimony, several findings concerning plaintiff's net worth, plaintiff's average income, the consumer price indexes, defendant's needs, and the amount of alimony awarded were supported by competent evidence and therefore are conclusive on appeal.

APPEAL by both parties from *Braswell, Judge.* Order entered 15 July 1980 in District Court, WAKE County. Heard in the Court of Appeals 31 August 1982.

This appeal is from a motion in the cause by defendant seeking an increase in alimony and child support from an order originally entered on 4 January 1973.

Plaintiff and defendant were married in 1964 and lived together until 1969, when plaintiff moved out of their residence. They were divorced in 1973. Two children were born to the couple, one in 1965 and one in 1967.

In the 1980 order now before us the trial court made findings of fact about the property of each party and concluded that the defendant was "substantially dependent" on the plaintiff at the time of the 1973 order.

The 1980 order also contained findings relevant to this case that have occurred since 1973. These included findings that the residence of defendant had lapsed into disrepair, that defendant had more than $21,000 in unpaid State and Federal tax liability, that she had received inheritances in 1973 and 1975, and that she had declared a revocable trust in 1977 with her residence as the

corpus, which was mortgaged twice in 1978 and 1979. In its order the court also detailed the plaintiff's financial status and holdings and considered an appraisal report on the value of real property in which plaintiff has an interest.

The real property owned by plaintiff and his present wife as tenants by the entirety was listed and the financial status of the wife was detailed. The order limited consideration of the present wife's income to weighing "plaintiff's necessary and reasonable expenses and debts against his financial resources in determining his financial ability to pay defendant's [increased] demands."

Findings on the reasonable needs of the defendant, the minor children and the plaintiff were itemized by the court. According to the order, the sum of plaintiff's needs, alimony and child support would exceed his average income over the prior three years even if he converted his partnership interest into an income producing asset.

Defendant's legal expenses were estimated by the court and found to be reasonable. The findings of fact concluded that defendant is still substantially dependent on plaintiff, that her standard of living is substantially lower and her debts substantially higher than at the time of the 1973 order.

The court defined the $1,500 per month award in the 1973 order as $500 per month alimony and $500 per month for each child as child support. The order concluded that there had been a material and substantial change in the circumstances and conditions of the parties that justified an increase in what defendant should receive. Although the order left the child support, medical and dental expenses at the same amount, the permanent alimony was increased to $1,000 per month, and defendant was granted $5,567.50 for attorney's fees for that part of her motion directed at increased alimony. Moreover, while it was not so ordered the court also found that the plaintiff could increase his ability to pay without depleting his estate by converting his non-income producing partnership interest into an income producing asset.

From this order, both parties appealed.

*Harrell and Titus, by Bernard A. Harrell and Richard C. Titus, for plaintiff appellant.*

*Celeste Gold Broughton, pro se.*

ARNOLD, Judge.

### PLAINTIFF'S APPEAL

Before an alimony award can be modified, the party seeking modification must show changed circumstances. G.S. 50-16.9. The change in circumstances must be substantial with a final decision based on a comparison of the facts existing at the original order and when the modification is sought. *Britt v. Britt*, 49 N.C. App. 463, 271 S.E. 2d 921 (1980).

[1] Plaintiff first contends that the 1980 order made no findings about the financial condition of the parties in 1973. Because there was nothing with which to compare the facts in 1980, he asserts that it was an error to find changed circumstances.

This argument, however, ignores the findings concerning the pre-divorce lifestyle, the property holdings of both parties in 1973, and the plaintiff's 1973 income. While it is true that no balance sheets were introduced at the 1973 hearing, the trial court did cite sufficient facts to show the relative financial condition of the parties in 1973. "When the trial judge is authorized to find the facts, his findings, if supported by competent evidence, will not be disturbed on appeal. . . ." *Beall v. Beall*, 290 N.C. 669, 673, 228 S.E. 2d 407, 409 (1976).

G.S. 50-16.9, the modification of alimony statute, does not list factors to help in the modification decision. But the alimony statutes (G.S. 50-16.1 through 50-16.10) have been read *in pari materia* because they deal with the same subject matter. *Williams v. Williams*, 299 N.C. 174, 261 S.E. 2d 849 (1980). In *Rowe v. Rowe*, 52 N.C. App. 646, 280 S.E. 2d 182 (1980), the court followed the *Williams* rationale and read G.S. 50-16.9 (modification of alimony) *in pari materia* with G.S. 50-16.5 (amount of alimony).

*Rowe* is important because G.S. 50-16.5 lists factors to consider on the modification issue. Evidence was presented here on three of those factors, namely the estates, earnings and accustomed standard of living of the parties.

In addition, the trial court made findings with respect to plaintiff's earning capacity. Specifically, it found that plaintiff could "substantially increase his income, without depleting his estate, by converting his non-income producing interest in MRW

Co. [a partnership with his two brothers] into proceeds for income producing assets. . . ." The court found that this could increase after-tax income by $12,000 per year.

[2]  Plaintiff bases two assignments of error on this finding by the trial court. He first attacks the earning capacity finding on the ground that there are no facts showing a deliberate attempt to depress his earnings.

Although earning capacity is a permissible ground on which to base modification under G.S. 50-16.5(a), plaintiff correctly cites the limitation on its use. As Chief Justice Sharp stated in *Beall*,

Capacity to earn . . . may be the basis of an award if it is based upon a proper finding that the husband is deliberately depressing his income or indulging himself in excessive spending because of a disregard of his marital obligation to provide reasonable support for his wife and children.

290 N.C. at 674, 228 S.E. 2d at 410. See also *Bowes v. Bowes*, 287 N.C. 163, 172-73, 214 S.E. 2d 40, 45 (1975). We agree with plaintiff that there is no showing in the record here of such a deliberate attempt by plaintiff to depress his income.

A lack of any finding that plaintiff depressed his income may not be fatal to the record before us in this case however. The award may still be properly based on the plaintiff's earnings under G.S. 50-16.5(a). Plaintiff's income at the time the award is made can be considered on the modification issue "if the husband is honestly engaged in a business to which he is properly adapted and is in fact seeking to operate his business profitably." *Bowes*, 287 N.C. at 172-73, 214 S.E. 2d at 45, citing *Conrad v. Conrad*, 252 N.C. 412, 418, 113 S.E. 2d 912, 916 (1960). The 1980 order made this finding about plaintiff's work as an attorney and considered his earnings in granting the modification.

Thus, even though earning capacity was discussed in the 1980 order, we do not find sufficient reliance by the trial court on it to constitute error or require a remand. In our opinion the trial court provided defendant with a "reasonable subsistence . . . in the exercise of a sound judicial discretion from the evidence before [it]." *Beall*, 290 N.C. at 673-74, 228 S.E. 2d at 410.

[3]  Plaintiff next attacks the earning capacity finding on the ground that it was a denial of equal protection for the trial court

to consider his earning capacity but not to consider defendant's earning capacity. A similar argument was rejected in *Upchurch v. Upchurch,* 34 N.C. App. 658, 239 S.E. 2d 701 (1977), *cert. denied,* 294 N.C. 363, 242 S.E. 2d 634 (1978). Although G.S. 50-16.5(a) lists the earning capacity of the parties as a factor in the amount of alimony, *Upchurch* concluded "we do not think that in all cases the court is required to make findings of fact on the question of the dependent spouse's earning capacity." 34 N.C. App. at 661, 239 S.E. 2d at 703. We agree with *Upchurch* and hold that it was not error when the trial court did not consider the defendant's earning capacity in this case.

[4] By a fourth assignment of error plaintiff attacks the award of attorney's fees to defendant for the motion directed at increased alimony. As plaintiff notes, G.S. 50-16.9, the modification section, does not mention attorney's fees.

G.S. 50-16.4 provides for attorney's fees when a dependent spouse would be entitled to alimony pendente lite under G.S. 50-16.3. In this case, defendant does not seek alimony pendente lite but seeks a modification of permanent alimony subsequent to an absolute divorce. This does not mean that defendant is denied her attorney's fees paid in seeking increased alimony, however.

*Upchurch* construed G.S. 50-16.4 to be applicable *any time* a dependent spouse could show that she has the *grounds* for alimony pendente lite, even though the proceeding was not brought for that purpose. (Emphasis added.) That *any time* "includes times subsequent to the determination of the issues in her favor at the trial of her cause on the merits." 34 N.C. App. at 664-65, 239 S.E. 2d at 705. Thus, if defendant meets the three requirements of G.S. 50-16.3(a) for alimony pendente lite, she can recover her attorney's fees even though she sought alimony modification subsequent to absolute divorce.

First, defendant must show that she is a "dependent spouse" as defined by G.S. 50-16.1(3). The trial court specifically made that finding in its 1980 order.

Second, it must appear from all the evidence presented that the defendant is entitled to the relief demanded. The increase in alimony below confirms this fact.

---

---

Finally, it must appear that defendant does not have sufficient means to defray expenses of the suit. The trial court also made a specific finding on this point.

G.S. 50-11(c) also supports defendant's claim to attorney's fees. Subject to two exceptions that are not relevant here, the statute provides that

> a decree of absolute divorce shall not impair or destroy the right of a spouse to receive alimony and *other rights provided for such spouse* under any judgment or decree of court rendered before or at the time of the rendering of the judgment for absolute divorce. (Emphasis added.)

The court in *Shore v. Shore,* 15 N.C. App. 629, 190 S.E. 2d 666 (1972), interpreted G.S. 50-11(c) to allow an award of counsel fees "for services rendered to a dependent spouse subsequent to an absolute divorce in seeking to obtain or in resisting a motion for revision of alimony or other rights. . . ." 15 N.C. App. at 633, 190 S.E. 2d at 669. Although a dependent spouse was resisting an effort by her husband to terminate alimony in *Shore* which is different from this case, its broad holding lends support to this case where defendant sought a revision in alimony. See also, 2 R. Lee, N.C. Family Law § 152 (4th ed. 1980).

[5] Plaintiff next contends that it was error for the trial court to admit the testimony of Clyde Idol as to the fair market value of the real property held by MRW Company, a partnership in which plaintiff is a member, and to conclude that the property's value was $850,000. Even though the trial judge acknowledged that seven comparable sales that Idol used in determining the MRW land value were not probative, and that he gave little consideration to the effect on the land value of the enactment of the Raleigh Flood Plain Regulations in 1973, the court set a valuation of $850,000 on the land, with plaintiff's share being valued at $425,000. This value was based in part on "Mr. Idol's general knowledge of real estate values."

To introduce evidence on valuation, a proper foundation must be laid. First, it must be shown "that the witness is familiar with the thing on which . . . [he] professes to put a value and [second] that he has such knowledge and experience as to enable him intelligently to place a value on it." *Britt v. Smith,* 6 N.C. App. 117,

122, 169 S.E. 2d 482, 486 (1969). *See also, Passmore v. Woodard,* 37 N.C. App. 535, 246 S.E. 2d 795 (1978).

Idol's testimony showed his familiarity with the property here. He personally walked it, drew a map of it and exhibited his knowledge of the surrounding areas, including their future development trends. In addition, he testified as to his qualifications and past experience of 25 years as a real estate appraiser to show his expertise in this area. Thus, the portions of Idol's testimony not based on the comparable land sales, which the trial court explicitly rejected in its findings, were competent evidence.

Whether the part of Idol's testimony that the court relied on was competent is important because

where there is sufficient competent evidence to support a finding of fact by the court, it will be presumed that the court disregarded incompetent evidence tending to support the same finding, unless the record affirmatively discloses that the finding was based, in part at least, on incompetent evidence heard over objection.

1 Strong's N.C. Index 3d, *Appeal and Error* § 57.2 (1976). *See also, City of Statesville v. Bowles,* 278 N.C. 497, 502, 180 S.E. 2d 111, 114-15 (1971).

There was sufficient competent evidence here to support the order. Idol testified as to his personal examination of the property, as to how it was zoned and to its highest and best use. The court also had before it an opinion on value from plaintiff's expert that the 1980 value was about the same as that in 1973 if the flood plain ordinance and inflation was considered, and an opinion from plaintiff that the value was $600,000. Plaintiff, as owner, was a competent witness on value. *Highway Comm. v. Helderman,* 285 N.C. 645, 652, 207 S.E. 2d 720, 725 (1974).

Finally, it is important that the court valued plaintiff's property at a substantially lower figure than Idol's valuation of $1,433,375. The court's figure of $850,000 was closer to plaintiff's opinion of $600,000 than to Idol's opinion. This further illustrates the court's reliance on factors other than Idol's testimony. It was not error to allow Idol to testify as to the fair market value of plaintiff's property or to conclude that the property's value was $850,000.

[6]   Plaintiff's final assignment of error is that testimony of the income and estate of plaintiff's present wife and consideration of that evidence in determining plaintiff's ability to pay increased alimony was incorrect. We find no error on this ground for two reasons.

First, the court's consideration of the assets of plaintiff's present wife was negligible. The order restricted consideration of her income to weighing "plaintiff's *necessary* and reasonable expenses and debts against his financial ability to pay defendant's demands . . ." (Emphasis added). In addition, only plaintiff's earnings and partnership interest were explicitly considered by the trial court in determining his ability to pay.

Second, a decision with facts similar to this case allowed consideration of the present wife's income in determining the husband's ability to pay. The court in *Wyatt v. Wyatt*, 35 N.C. App. 650, 242 S.E. 2d 180 (1978), based its decision largely on the fact that the present wife was a member of the same household as the husband. "Under these circumstances, it was proper for the court to consider the substantial income received by a member of that household who shared in the responsibility for its support." 35 N.C. App. at 652, 242 S.E. 2d at 181. Here, as in *Wyatt*, plaintiff and his present wife live together. The fact that the husband raised the issue of his present wife's income in *Wyatt*, unlike this case where the former wife raised the issue, is not enough to dissuade our reliance in part on it.

## DEFENDANT'S APPEAL

Defendant first questions the value of plaintiff's interest in MRW Company. The discussion above disposes of the issue and we find no error as to the court's valuation of the property.

[7]   A second assignment of error is that the trial judge incorrectly calculated the financial status of the parties in 1973 and 1980. Defendant in essence is attacking the trial court's findings of fact. Under G.S. 1A-1, Rule 52(a), the trial judge is required to find facts specially in any action tried without a jury. "[I]f supported by competent evidence, such facts are as conclusive as the verdict of a jury." *Coggins v. City of Asheville*, 278 N.C. 428, 434, 180 S.E. 2d 149, 153 (1971). *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E. 2d 29, 33 (1968).

Defendant here is rearguing facts that have a basis in the record and support the findings of the order from which she appeals. Three examples illustrate her approach. First, she "finds" that plaintiff's net worth is $1,078,924. This figure apparently includes the estimate of Clyde Idol that plaintiff's interest in MRW was worth over $715,000. But the trial court made a specific finding that plaintiff's interest was worth only $425,000. The court's finding was based on competent evidence as previously discussed.

Second, she disputes as too low the court's determination that plaintiff's average income for the years 1977 through 1979 was $55,000. We do not find this amount to be "arbitrarily . . . established" as defendant contends, but find sufficient evidence on an examination of the record to support the trial court.

Third, defendant argues that the court did not take judicial notice of the consumer price indexes introduced into evidence. This contention ignores the explicit statement in the record that "the value of the dollar has depreciated substantially between January 4, 1973 and . . . May, 1980 . . . ." Thus, there is in the record competent evidence to support the court's findings and we can find no error on this issue.

Defendant next attacks the court's finding that her needs that she listed at trial were unrealistic in light of available funds, especially given the plaintiff's property holdings in MRW and the possibility of converting them into income-producing property. We have already discussed the court's improper consideration of plaintiff's earning capacity.

As for defendant's needs, she estimated them to be over $92,000 a year. While "accustomed standard of living" is a factor that G.S. 50-16.5(a) lists for determining the amount of alimony, there is no evidence that defendant was ever accustomed to the standard of living she now seeks while she was married to plaintiff. The trial court found that plaintiff's total income in the early 1970's was less than half of what defendant now seeks. Moreover, there is sufficient evidence in the record to support the court's findings of plaintiff's income being much less than what defendant now seeks. We will not disturb the court's finding of unrealistic demands by the defendant. It should be remembered that "the question of the correct amount of alimony and child support is a

question of fairness to all parties." *Beall,* 290 N.C. at 674, 228 S.E. 2d at 413.

Defendant's fourth argument concerns the amount of alimony awarded by the court. In her brief under this topic she discusses a number of areas that are not relevant to this issue. Given the facts of this case and our discussion above on factors to be considered in setting alimony, we find no abuse of discretion by the trial judge. *Eudy v. Eudy,* 288 N.C. 71, 215 S.E. 2d 782 (1975); *Schloss v. Schloss,* 273 N.C. 266, 160 S.E. 2d 5 (1968); *Sayland v. Sayland,* 267 N.C. 378, 148 S.E. 2d 218 (1966).

The final assignment of error by defendant is in essence an attack on the court's findings of fact. She argues that there was not full disclosure of plaintiff's assets at trial. We can only conclude that a comparison of the record with the order appealed from reveals evidence to support the trial court.

We find no error prejudicial to either plaintiff or defendant and the order appealed from is

Affirmed.

Judges HEDRICK and WELLS concur.